FILED

AUG 2 9 2007

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JOHN T. ELDER,**

        **Petitioner,**

v.

        Civil Action No. 1:05cv100
        Criminal Action No. 1:04cr10(1)
        (Judge Keeley)

**UNITED STATES OF AMERICA,**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On June 30, 2005, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. The Government filed its response July 26, 2005, and the petitioner filed a reply on August 11, 2005.

### I. Factual and Procedural History

**A.**     **Conviction and Sentence**

On April 20, 2004, the petitioner signed a plea agreement by which he agreed to plead guilty to Count One of the indictment, being a felon in possession in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Additionally, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding waiver:

> 10.     Mr. Elder is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on

the grounds set forth in Title 18, United States Code, Section 3742, in exchange for the concessions made by the United States in this plea agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28 United States Code, Section 2255. The United States waives its right to appeal the sentence. The parties have the right during any appeal to argue in support of the sentence.

On April 22, 2004, the petitioner entered his plea in open court. At the time, the petitioner was 27 years old and had a tenth grade education. See Plea Hearing Transcript (dckt. 43) at 9. The Court confirmed that the petitioner could read, write, and understand the English language. Id. at 10. The petitioner denied being recently treated for any mental illnesses. Id. The petitioner also denied being under the influence of any drugs, medications or alcohol. Id. The petitioner confirmed that he received a copy of the indictment against him, that he had read it and discussed the charges with his attorney. Id. at 11. The petitioner was specifically asked if he understood the charges contained in the indictment, and the petitioner answer affirmatively. Id.

The Court next asked the petitioner if he intended to change his plea to guilty and whether the petitioner had discussed that change with his attorney. Id. at 16. The petitioner stated yes to both inquiries. Id. The petitioner then confirmed that he intended to enter into a written plea agreement with the United States as summarized earlier in the proceedings. Id. at 17. The petitioner confirmed that he heard the summary and that he agreed with the summary as presented. Id. The petitioner was given a copy of the written plea agreement to review and confirmed that he read the agreement and that he fully discussed the agreement with counsel prior to signing it. Id.

The petitioner then stated that he understood the terms of the written plea agreement prior to signing it and that he understood the terms of the plea agreement at the time of the hearing. Id. at 18. The petitioner declined needing additional time to privately discuss the plea agreement with

counsel. Id. The petitioner confirmed that the written plea agreement contained the entire agreement of the parties, that he was not made any promises outside the agreement, and that he was not threatened, coerced, forced or otherwise induced to sign the agreement. Id. at 18, 21. The Court then proceeded to review certain provisions of the plea agreement with the petitioner. Id. at 19-21. The petitioner also confirmed that his decision to enter into the plea agreement was a free and voluntary act and that the petitioner was entering the agreement because he believed he was guilty of the charged offense. Id. at 22.

The Court then confirmed that the petitioner realized and understood that by pleading guilty to a felony, he would be giving up certain valuable rights. Id. The petitioner stated that he understood. Id. The Court also confirmed that the petitioner understood the possible sentence to which the petitioner would be exposed by virtue of his guilty plea, including imprisonment, a fine, supervised release and a mandatory special assessment. Id. The petitioner was advised that by pleading guilty, his sentence could be increased if he had prior firearms offenses, prior violent felonies, and prior drug offenses. Id. at 23. The petitioner stated that he understood. Id. The Court again confirmed that the petitioner understood the possible consequences of his guilty plea including jail time, fines, supervised release, and other monetary assessments. Id. at 24-25. The petitioner stated that he understood. Id. at 25.

With regard to his waiver, the following exchange occurred:

**The Court:** Do you understand that under the terms of your written plea agreement that you give up all of your direct and collateral appeal rights to any sentence that is imposed on you?

**Mr. Elder:** Yes, sir.

**The Court:** And this is an absolute giving up. Do you understand that?

**Mr. Elder:** Yes.

Id. at 25.

The Court then confirmed that the petitioner understood that by pleading guilty he was giving up his right to a jury trial, to put the government to its burden of proof beyond a reasonable doubt, to confront and cross-examine witnesses, and to testify on his own behalf. Id. at 26. The Court examined several other rights the petitioner would be giving up by pleading guilty and the petitioner stated that he understood. Id. at 26-27. The Court then read Count One of the indictment and explained the elements of the offense to the petitioner. Id. at 27-28. The Court then asked the petitioner what he did, in his own words, which makes him believe he is guilty of the charged offense. Id. at 29. The petitioner stated as follows:

> **Mr. Elder:** I went to my trunk and I had got a firearm, had a gun.
>
> **The Court:** All right. And when did you supposedly do this, sir?
>
> **Mr. Elder:** April the 5th.
>
> **The Court:** Of last year?
>
> **Mr. Elder:** Yes.
>
> **The Court:** Where were you when you did that, sir?
>
> **Mr. Elder:** 405 Hamilton Street.
>
> **The Court:** And where is that located?
>
> **Mr. Elder:** In Fairmont, Marion County, West Virginia.
>
> **The Court:** And this – had you previously been convicted in Cuyahoga County, Ohio, of Aggravated Riot?
>
> **Mr. Elder:** Yes, sir.

Id. at 29.

After the government presented witness testimony to provide a further factual basis for the

plea, the petitioner was asked to enter his plea to Count One in open court. Id. at 30-32. The petitioner proceeded to plead guilty to being a felon in possession of a firearm. Id. at 32-33. The petitioner further confirmed that his plea was freely and voluntarily made, that he understood everything that took place at the change of plea hearing, and that he intended to plead guilty to Count One of the indictment. Id. at 33. The Court then found the petitioner fully competent and capable of entering an informed plea. Id. The Court also found that the petitioner was aware and understood the nature of the charges against him and the consequences of his plea of guilty. Id. Finally, the Court found that the petitioner's plea was knowing and voluntary and that there was a sufficient factual basis for the plea. Id. The Court then advised the petitioner that it would be recommending that the guilty plea be accepted.[1] Id.

On April 24, 2004, the undersigned issued a report and recommendation that the petitioner's guilty plea be accepted. (Crim. Dckt. 31.) That recommendation was accepted by the District Judge on May 10, 2004. (Crim. Dckt. 32.) On August 12, 2004, the petitioner was sentenced to 92 months imprisonment and three years supervised release.

**B.     Direct Appeal**

The petitioner did not pursue a direct appeal.

**C.     Petitioner's Federal Habeas Petition**

In his federal habeas petition, the petitioner asserts the following grounds for relief:

(1) his plea was unlawfully or involuntarily made, without an understanding of the nature of the charge and the consequences of the plea;

(2) his sentence was unconstitutionally enhanced by the binding mandatory nature of the

---

[1] The petitioner waived his right to have a District Judge take his plea and fully and freely consented to have a Magistrate Judge hear the plea. Plea Transcripts at 13-15; Crim. Dckt. 30.

sentencing guidelines;

(3) his sentence is unconstitutional under the Fifth and Sixth Amendments of the United States Constitution because his sentence was determined under the mandatory and binding sentencing guidelines; and

(4) counsel was ineffective because he did not ask the petitioner whether he wanted to file a direct appeal.

### D. The Government's Response

In the response, the government argues that in paragraph ten of the plea agreement, the petitioner waived his right to bring a motion pursuant to 28 U.S.C. § 2255 and the motion should therefore be dismissed.

### E. Elder's Reply

In reply to the respondent's response, the petitioner reargues the claims raised in the petition and stresses the factors the Court should consider in determining whether his plea was freely and voluntarily made. Moreover, the petitioner agrees that the issue of waiver should be addressed prior to a response on the merits.

## II. Standard of Review

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727 (4th Cir. 1994), the Fourth Circuit found that "a waiver-

of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." Attar at 731. The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in United States v. Lemaster, supra, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although, the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Lemaster, 403 F.3d at 732 (it cannot be fairly said that a defendant

"waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations").

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> [t]he validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted). In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated, "[w]e do not think the general waiver of the right to challenge" a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel." Lemaster, 403 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or

during sentencing, are not barred by a general waiver-of-appeal rights.

However, several courts have distinguished IAC claims raised in a § 2255 case, from those raised on direct appeal. In Braxton v. United States, 358 F.Supp.2d 497 (W.D.Va. 2005), the Western District of Virginia noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641, 645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F.Supp.2d 489, 493 (E.D. Va. 2001)). Nonetheless, the Western District of Virginia, distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

The Western District of Virginia further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995), also supports such a distinction.

Braxton at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

### III. Analysis

#### A. Validity of Plea/Waiver

Upon a review of the petition, the undersigned concludes that if the plea and waiver are valid, grounds two and three would be waived. The petitioner asserts, however, that his plea, and therefore his waiver, was not valid because he was under the influence of psychotropic drugs at the time he entered his plea.

A guilty plea must be a voluntary and intelligent decision of the defendant. Boykin v. Alabama, 395 U.S. 238, 242 (1969); North Carolina v. Alford, 400 U.S. 25, 31 (1970). If the defendant does not understand his constitutional protections and the charges made against him, the guilty plea is invalid. Henderson v. Morgan, 426 U.S. 637, 645 (1976). "[A] valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea,'" Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365 (4th Cir.), cert. denied, 414 U.S. 1005 (1973) (quoting Wade v. Coiner, 468 F.2d 1059, 1060 (4th Cir. 1972)), including the length of the maximum sentence or any mandatory minimum sentence which may be imposed. Manley v. United States, 588 F.2d 79, 81 (4th Cir. 1978).

A defendant's statement that his plea is voluntary and knowing is generally considered conclusive on these issues. Savino v. Murray, 82 F.3d 593, 603 (4th Cir. 1996). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992),

cert. denied, 506 U.S. 885 (1992). A defendant's statements at the plea hearing are "strong evidence" of the voluntariness of the plea agreement. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991), cert. denied, 503 U.S. 997 (1992). And, "findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea. United States v. Lambey, 949 F. 2d 133, 137 (4th Cir. 1991) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).

Moreover, "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated–'permit[ting] quick disposition of baseless collateral attacks.' LeMaster, 403 F. 3d at 222 (quoting Blackledge v. Allison, 431 U.S. at 79, n. 19).

In this case, the Court's Rule 11 Hearing clearly complied with the mandates of Rule 11. Moreover, the undersigned finds it significant that the petitioner does not assert, much less establish, that any alleged drugs or medications he was on at the time of the plea hearing, rendered him unable to understand the proceedings or the consequences of what he was doing. Instead, the petitioner appears to argue that his plea is invalid merely because he had allegedly taken some drugs or medications.

In addition, the petitioner does not allege what drugs or medications he had taken, nor does he allege that those drugs had any adverse effect on his understanding of the proceedings. In point of fact, the petitioner's allegations in his § 2255 motion directly contradict the petitioner's sworn statements given under oath at his Rule 11 hearing. Such bare-bones allegations are simply not sufficient to overcome the "formidable barrier" created by petitioner's statements at the Rule 11 hearing. In particular, the undersigned notes that despite the petitioner's allegations, the plea

transcripts show that the petitioner was coherent, that he answered all questions asked of him in an informed and intelligent manner, and that he demonstrated an understanding of the nature of the charges against him and the consequences of pleading guilty.

Accordingly, the petitioner has failed to meet his burden under § 2255 and cannot establish that his plea was not knowingly, voluntarily and freely given.[2] Consequently, the petitioner's plea, and waiver of collateral rights, are valid and the petitioner is not entitled to relief under § 2255.[3]

## B. Failure to File an Appeal

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

---

[2] "A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

[3] Regardless of the valid plea and waiver, the petitioner's claims otherwise lack merit. First, the petitioner does not assert that he would not have pled guilty given different circumstances. Second, the petitioner's grounds two and three are based on the Supreme Court's holding in United States v. Booker, 543 U.S. 220 (2005) (In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court held that "when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." In Booker, the Supreme Court held that Blakely applies to federal sentencing guidelines. More specifically, the Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial because a judge, not a jury, determines facts which could increase the defendant's sentence beyond the sentence which could be imposed based on jury fact finding. Consequently, the Supreme Court severed the unconstitutional provisions from the Sentence Reform Act and made the guidelines advisory.). Booker, however, is inapplicable to the petitioner's case because Booker is not retroactive to cases on collateral review. See United States v. Morris, 429 F.3d 65 (2005).

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Id. at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, at 478. Therefore, because counsel has an affirmative duty to file an appeal when so requested, the failure to file an appeal falls outside the scope of a valid waiver.

In this case, the petitioner argues that counsel failed to ask him whether or not he wished to file an appeal. Considering that the plea agreement contained a waiver of appellate rights, it was not unreasonable for counsel not to consult with the petitioner regarding an appeal. Moreover, the Supreme Court has found that counsel performs in an unreasonable manner only by failing to follow his clients *express* instructions with respect to an appeal. Here, there were no such instructions. Consequently, counsel cannot be ineffective for failing to file an appeal that was never requested.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the petitioner's § 2255 motion be **DENIED with prejudice** and **DISMISSED** from the Court's active docket.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any

objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: August 29, 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE